UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cathy Adrenna Banks,                                            Civil No. 16-cv-3126 (FLN)

    Plaintiff,

v.                                                              **ORDER**

Nancy A. Berryhill,
Commissioner of Social Security,

    Defendant.

_____

Howard D. Olinsky and Edward C. Olson for Plaintiff.
Pamela A. Marentette, Assistant United States Attorney, for Defendant.

_____

Plaintiff Cathy Adrenna Banks seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. This Court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross motions for summary judgement. *See* ECF Nos. 16 and 18. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

## I. INTRODUCTION

Banks applied for disability insurance benefits on September 3, 2013, alleging disability as of February 27, 2013. Administrative Record [hereinafter "AR"] 160–61. Banks' application was denied initially on November 21, 2013, and upon reconsideration on May 13, 2014. AR 98–

102, 108–11. An administrative hearing was held before Administrative Law Judge ("ALJ") Peter Kimball on July 8, 2015. AR 39–80. The ALJ found that Banks was not disabled and denied Banks' application for disability insurance benefits on September 21, 2015. AR 9–27. On July 19, 2016, the SSA Appeals Council denied Banks' request for review and finalized the ALJ's decision for purposes of judicial review. AR 1–3; *see* 20 C.F.R. § 404.981. On September 19, 2016, Banks commenced this civil action, seeking reversal of the ALJ's decision or, in the alternative, remand for further proceedings. ECF No. 1 at 4.

## II.  FINDINGS OF FACTS

### A.  Medical Evidence

Banks was fifty-one years-old on the date of her alleged disability. AR 160. Banks claims the following severe impairments prevent her from securing and maintaining competitive employment: migraines, asthma, allergies, carpal tunnel, trigger fingers, and osteoarthritis. AR 179. Banks completed two-years of post-secondary education, and her past relevant work is as a patient coordinator. AR 47.

#### 1.  Migraines, Asthma, and Allergies

The medical records note that Banks has a history of migraines and asthma. *See, e.g.*, AR 442, 448, 702. On January 28, 2014, Banks visited Guarav Guliani, MD, a neurologist, about paresthesia in her right hand, headaches and stiffness in her neck. AR 448–49. At the time, Banks was taking Imitrex about once a week for bad headaches, and said the medication was helping and made things livable. *Id*. Dr. Guliani added amitriptyline to Banks' pain regimen, and referred Banks to physical therapy for her headache and neck pain. AR 449.

In April of 2014, Banks reported having headaches every day to every other day, and severe headaches about three to four times a month. AR 469. During this time period, Banks

missed two physical therapy appointments, which she stated were due to her short-term memory deficit. AR 581. In August of 2014, Banks reported her headaches had improved somewhat and were a quarter of what they once were. AR 615. On September 30, 2014, Banks told her physical therapist that while she continued to have headaches about every other day, they were decreasing in severity. AR 749.

In November of 2014, Banks saw Adam Loavenbruck, MD, and informed him that her headaches were slightly improving. AR 688. Dr. Loavenbruck noted a likely driving factor behind Banks' headaches was sleep deprivation. AR 687–89.

On September 17, 2013, Banks visited Hennepin County Medical Center (HCMC) for a preoperative examination. AR 297. During her medical examination, her lungs were clear to percussion and auscultation. AR 298. On July 15, 2014, Banks again visited HCMC for a physical examination. AR 647. She had no cough or shortness of breath, her breathing was normal, and she had no respiratory distress. AR 649–50.

### 2. Osteoarthritis, Carpal Tunnel Syndrome, and Trigger Fingers

On October 22, 2013, Banks presented to Thomas A. Bergman, MD, with complaints of pain in her right (dominant) upper extremity after a fall in January of 2012. AR 400. Dr. Bergman noted that Banks had no major weakness in her hands. *Id*. Her left arm was assessed as normal, and her right arm showed only generalized weakness in her deltoids and triceps; a recent surgery was believed to be affecting her strength. *Id.*

Banks was diagnosed with a right mild median sensory neuropathy by electromyography (EMG) on June 21, 2012. AR 263. In August of 2012, Banks underwent right carpal tunnel release surgery. AR 268. An EMG performed on August 20, 2013, revealed presence of a

subacute to chronic C7-C8 radiculopathy and a mild median mononeuropathy localized to the wrist and consistent with mild carpal tunnel syndrome. AR 263–65.

On August 19, 2013, Banks presented to Thomas F. Varecka, MD, at HCMC's Orthopedic Clinic for right carpal tunnel syndrome and trigger finger. AR 268. On examination, Banks' sensation was noted to be intact to light touch along the median, radial, and ulnar nerve distributions of the right hand, no atrophy was observed in the thenar muscles, her median nerve moto appeared to be intact, and she was able to abduct and fire the extensor pollicis longus (EPL) and flexor pollicis longus (FPL). AR 271.

On September 9, 2013, Dr. Varecka diagnosed Banks with questionably persistent right carpal tunnel syndrome, C7-C9 radiculopathy, and right index, middle, and ring finger triggers. AR 279–80. Banks' EMG findings in regard to her carpal tunnel were not significantly different from her preoperative EMG. AR 279. An MRI of the cervical spine on September 19, 2013, showed degenerative disc disease. AR 468.

On September 25, 2013, Dr. Varecka performed trigger finger release surgery. AR 313. On October 21, 2013, Banks reported she was doing well to Dr. Varecka. AR 392. Banks reported a bit of tenderness around the incisions and some soreness when fully extending her fingers, but otherwise no problems and an ability to fully extend all her fingers and form a full, tight fist with full flexion. *Id.*

In December of 2013, Banks returned to Dr. Varecka. AR 411. Dr. Varecka observed tenderness in her right hand, with moderate weakness, and inability to hyperextend the fingers, but full active finger and elbow range of motion. *Id.* Dr. Varecka recommended conservative treatment with occupational therapy. *Id.*

Banks began attending hand therapy in January of 2014, and physical therapy for neck pain and headache pain in February of 2014. *See generally,* AR 418–98. In March of 2014, Banks reported her neck was feeling "not too bad" and an improved active cervical range of motion was noted. AR 516–17. When Dr. Varecka saw Banks on March 24, 2014, a neurological examination of the right arm demonstrated motor function of 5/5 in the C5 nerve root distribution, and 4/5 in the C6-TI nerve root distribution. AR 524. Dr. Varecka noted the Banks' reported symptoms of numbness and tingling were probably residual nerve damage that might improve with time, and instructed Banks to continue with physical therapy. AR 525.

In April of 2014, Banks saw Dr. Guliani for headaches and neck pain. AR 572. Banks reported that her neck was moving better but that she needed to continue her physical therapy. AR 573. Dr. Guliani noted that it had been six weeks since Banks' last therapy session. AR 574. Banks was ordered to continue physical therapy to improve her reaching, and sleeping. *Id*.

On July 15, 2014, Banks attended a routine physical examination with her primary care physician, Henry Smith, MD. AR 641–47. During the exam, no neurological or musculoskeletal abnormalities were observed and her reflexes were assessed as normal. AR 644. Banks was told to continue physical therapy and was given a wrist splint. AR 646. On November 25, 2014, Dr. Loavenbruck examined Banks and observed normal finger tapping, wiggling and movement, her strength was 5/5 in upper extremities, and her muscle bulk and tone were normal. AR 690–91.

On December 24, 2014, Banks saw orthopedic practitioner, Hadley Powless, P.A, for complaints of left shoulder pain. AR 837. An x-ray was taken of Banks' shoulder, which showed some mild degenerative changes, but no fractures or lesions were observed. *Id*. Mr. Powless recommended conservative treatment with a cortisone injection, physical therapy, and Tylenol as needed. AR 838. Mr. Powless had similar findings on April 1, 2014. AR 912–13.

### B.    Administrative Hearing

The administrative hearing was held on July 8, 2015. AR 39–80. Banks was represented by her attorney, Aaron Faurschou. AR 39–40. Banks testified on her own behalf. *Id*. David Russell, a vocational expert ("VE"), testified as well. AR 65–79.

#### 1.    Banks' Testimony

At the administrative hearing, Banks testified she lived with her ten-year-old daughter and parents. AR 45. She testified that at home she sweeps the floor, washes dishes by hand, and puts laundry in the washing machine. AR 58. She has no problem being on her feet for most of the day, but has some difficulty if she is required to stand in one spot. *Id*. She is able to drive, attend church every Sunday, sing in the church choir, shop, help her daughter with her homework, and attend school activities with her daughter. AR 58–60.

Banks testified she gets headaches at least every other day that last up to four hours. AR 53, 55. When she experiences headaches, she lies down and sleeps. AR 55. Banks stated she does not have significant problems with walking unless she gets dizzy from a migraine, after which she cannot stand in one place for longer than ten minutes. AR 58–59, 63.

Banks also testified her left shoulder hurt constantly and interfered with her ability to lift and she sometimes drops things with her right hand due to pain and swelling. AR 53, 61. She estimated she could lift less than ten pounds. AR 63. She testified she experienced neck pain when she had a migraine. AR 56.

#### 2.    VE Testimony

After Banks, the VE testified. He stated that Banks' past work experience as a patient coordinator included the roles of receptionist and information clerk. AR 77–78. The patient

coordinator job was considered semi-skilled. AR 66. The receptionist component of the job is a sedentary, semiskilled job. AR 67–68. The ALJ then posed the following hypothetical to the VE:

> assume a person of the same work experience, the same age, the same academic and vocational profile as the claimant and with the following limitations: the person would be limited to lifting occasionally 20 pounds and frequently 10 pounds; sitting for six hours out of an eight-hour day, standing for six hours out of an eight-hour day, and walking for six hours out of an eight-hour day; pushing, pulling, as much as can lift and carry; the hand controls would be limited to occasional basis on the right-hand side. In terms of reaching overhead, they would be limited to never on the left-hand side, and handling on the right side and fingering and feeling would be on treatment basis, again, on the right side. In terms of posture limitations, the claimant would be limited to occasional climbing of ladders and scaffolds and occasional crawling. The person—the hypothetical person would be limited to occasional work around unprotected heights and moving, mechanical parts, and occasional exposure to dust, odors, fumes, and pulmonary irritants. Based on this hypothetical, would the individual be able to perform the past relevant work that the claimant had?

AR 69–70. The VE opined such a hypothetical person would be able to perform Banks' past relevant work as generally outlined in the Dictionary of Occupational Titles ("DOT"), and as performed. AR 70.

For the second hypothetical, the individual added limitations in terms of "understanding, remembering, and carrying out instructions" and "would be limited to performing simple and routine tasks." *Id.* The VE opined such a hypothetical person would not be able to perform the past work identified because the past work was at least semiskilled and the limitations required simple, routine, and unskilled work. *Id.* The VE identified security monitor as unskilled, sedentary work with very little, or no hand use. AR 70–71. According to the VE, security monitor is a sedentary job, with 1,000 jobs in Minnesota. AR 71. The VE also identified cashier with 63,000 jobs in Minnesota and 3,000,000 nationally, light packaging with 3,000 jobs in Minnesota and 75,000 nationally, and a school bus monitor with 1,100 jobs in Minnesota and 50,000 nationally. AR 71–72.

For the third hypothetical, the person had reduced "hand use on the right-hand side—so handling, fingering, and feeling would be on an occasional basis with the right-hand, and reaching in all directions would be frequent on the left side . . . ." AR 71. The VE testified this hypothetical person would be able to perform at the light or sedentary level as a school bus monitor or a security monitor. AR 73–74. Such a hypothetical person could not perform the cashier or packager job as they required frequent hand use. AR 73.

The VE also testified an individual with the manipulative restrictions from hypothetical three and a sedentary lifting requirement would be able to perform the information clerk role but not the receptionist role or patient coordinator role. AR 76–77.

In the fourth hypothetical, the VE was asked to take the individual from the third hypothetical, but assume:

> the person [is limited] to sedentary level of exertional activity, lifting, and carrying 10 pounds occasionally, and frequently less than 10 pounds. In terms of time on feet, though, sitting will be six out of eight, standing will be six out of eight, and walking will be six out of eight. So that is the only variation. It would be the same limitations from the third hypothetical except reduced to sedentary in terms of lifting and carrying . . . .

AR 74. The VE testified the DOT does not discriminate between overhead reaching versus reaching and only reaching, handling, and fingering is addressed in the DOT. VE 75. The VE testified there would be no light, unskilled jobs with the lifting and carrying requirements of 10 pounds at the sedentary level. AR 75.

### 3. The ALJ's Decision

On September 21, 2015, the ALJ issued his determination that Banks was not disabled. AR 23. In determining Banks was not disabled, the ALJ followed the five-step sequential process established by the SSA. *See* 20 C.F.R. § 404.1520(a)(4).

The first step in the sequential evaluation is to evaluate the claimant's work history to see if they are engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.15071 and 416.971. If the claimant has performed substantial work activity then she is not disabled. *Id.* At step one, the ALJ found Banks had not engaged in substantial gainful activity since February 27, 2013, the alleged onset date of her disability. AR 14. The ALJ reasoned that, even though Banks showed wages in late 2013 and early 2014, they were less than the amount considered substantial gainful activity. *Id.*

The second step in the sequential evaluation is to determine whether the claimant has a severe, medically-determinable impairment, or combination of impairments, that significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). At the second step, the ALJ found Banks had the following severe impairments: headaches, asthma, right hand carpal tunnel syndrome status post carpal tunnel release surgery and trigger finger release surgery, degenerative disc disease of the cervical spine and chronic cervical radiculopathy, and left shoulder bicipital tendinosis and rotator cuff tear. AR 14. In making his determination, the ALJ considered Banks' medical records and found that the impairments he found more than minimally limited Banks' ability to perform basic work activity. AR 15.

The third step in the sequential evaluation requires the ALJ to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d), 404.1525, 404.1526. At this step, the ALJ found Banks does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 15.

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Function Capacity ("RFC"). Here, the ALJ found Banks had the residual functional capacity to:

> perform the sedentary level of exertional activity (lifting and carrying ten pounds occasionally and frequently less than ten pounds); in terms of time on feet, though, sitting will only be six out of eight [hours], standing would be six out of eight [hours], and walking would be six out of eight [hours]; hand controls would be limited to an occasional basis on the right-hand side; in terms of reaching overhead, it would be limited to never on the left-hand side and occasionally on the right-hand side; reaching in all other directions would be frequent on the left side; handling, fingering, and feeling would be on an occasional basis with the right hand; in terms of postural limitations, the claimant would be limited to occasional climbing of ladders, scaffolds, and occasional crawling; she would be limited to occasional work around unprotected heights and moving mechanical parts and occasional exposure to dusts, odors, fumes, and pulmonary irritants.

AR 16–17.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v). If the claimant cannot perform past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

The VE testified Banks essentially had three different roles in her one past job as a patient coordinator, which makes it a composite job. AR 66–67. The ALJ found that since Banks was unable to perform all parts of her past job as it was actually performed, she was unable to perform her past relevant work. AR 22.

At step five, the ALJ concluded that considering Banks' age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national

10

economy that she could perform. AR 22. This determination was based on the VE's testimony, which the ALJ found consistent with the DOT. AR 23.

Based on the ALJ's findings at step five that there were adequate jobs available to Banks, the ALJ denied Banks' application for disability benefits. *Id*.

### III.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Quals v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999);

*see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Therefore, this Court's review of the ALJ's factual determinations is deferential, and does not re-weigh the evidence nor review the factual record de novo. *See Chater*, 107 F.3d at 620; *Roe v. Chater*, 92 F.3d 672, 675 (8th. Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. CONCLUSIONS OF LAW

Banks argues that the ALJ: (1) committed legal error by failing to properly develop the medical record and obtain a functional assessment from a qualified medical source to assess the nature and extent of Banks' limitations; and (2) the ALJ's determination at step five is unsupported by substantial evidence. *See* ECF No. 17 at 1. The Commissioner argues that the ALJ properly determined Banks' residual functional capacity, and substantial evidence in the record supports the ALJ's step five findings. *See* ECF No. 19 at 1–2. After a review of the

record, the Court concludes the ALJ's findings at each step of the sequential process were supported by substantial evidence in the record as a whole.

### A.     The ALJ Properly Developed the Record and Determined Banks' RFC.

Banks argues the ALJ should have ordered a consultative examination in order to fully develop the record. *See* ECF No. 17 at 17–18. An ALJ "bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008). However, "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); *see also Snead v. Barnhart*, 360 F3d 834, 838 (8th Cir. 2004). An ALJ's RFC determination should be based on all of the evidence in the record, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

Here, there is no indication that the ALJ was unable to make an assessment based on the evidence in the record. In his RFC determination, the ALJ specifically noted that he considered Banks' medical record and opinion evidence, and after careful consideration of the entire record, determined Banks' RFC. AR 16–17. Thus, the Court concludes that the ALJ's record was fully developed, and there is no indication that he felt unable to make his assessment in the absence of a consultative examination.

There is also substantial evidence in the record to support the ALJ's RFC determination. The ALJ found that Banks' right hand would have occasional limitations in handling, fingering, and feeling. AR 16–17. This finding was supported by medical evidence in the record. The ALJ noted that on August 19, 2013, Banks visited Dr. Varecka for right carpal tunnel syndrome and

trigger finger. AR 18, 268. The ALJ's RFC determination was consistent with Dr. Varecka assessment that Banks' sensation was intact to light touch along the median, radial, and ulnar nerve distributions on her right hand, and there was no atrophy in her thenar muscles. *Id*.

Further, in making his RFC determination, the ALJ found that with respect to Banks' medically determinable impairments, her statements concerning the intensity, persistence, and limiting effects of these symptoms was not entirely credible. AR 17–18. The ALJ, however, credited Banks' degree of pain and reduced her RFC to accommodate her limitations accordingly. *Id*.

The ALJ also gave only limited weight to the state agency medical experts, finding that the evidence presented at the hearing level, "supports some greater exertional limitations." AR 21. The ALJ increased Banks' limitations and noted that "[n]o other treating or examining provider has offered an opinion that the claimant is disabled or even has limitations greater than those included in the above residual functional capacity." *Id.*

This Court's review of the ALJ's factual determination is deferential, and it neither re-weighs the evidence, reviews the factual record *de novo*, *see Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997), nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). If the ALJ's decision is supported by substantial evidence in the record, this Court cannot reverse simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Because the ALJ's RFC determination relied on a sufficient examination of the whole record, the Court concludes that substantial evidence exists to support the ALJ's RFC determination. *See id.*

**B.      The ALJ's Step Five Determination is Supported by Substantial Evidence.**

Banks argues that the ALJ determination at step five is unsupported by substantial evidence as the ALJ relied on the VE's testimony elicited in response to an incomplete hypothetical question. ECF No. 17 at 18–19. The Court disagrees. "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). However, "the hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequences' of those impairments." *Id*. (citing *Roe v. Chater*, 92 F.3d 672, 679–77 (8th Cir. 1996)). The Court concludes there is substantial evidence to support the hypotheticals the ALJ posed to the VE, and reliance on the VE's testimony was reasonable based on substantial evidence in the record as a whole. *See* AR 21–22; *see also* 42 U.S.C. § 405(g).

## V.  CONCLUSION AND ORDER

If the ALJ's decision is supported by substantial evidence in the record, this Court cannot reverse simply because "substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig*, 212 F.3d at 436). Here, substantial evidence in the record supports the ALJ's determination that Banks is not disabled. Accordingly, the Commissioner's motion for summary judgment is granted.

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgement (ECF No. 16) is **DENIED**;

2. Defendant's Motion for Summary Judgement (ECF No. 18) is **GRANTED**;

3. The Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

**LET JUDGEMENT BE ENTERED ACCORDINGLY.**

DATED: March 28, 2018   *s/Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge